UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

THOMAS ALFRED YOUNG,

    Petitioner,

v.                                      Case No. 2:12-cv-417
                                        HON. ROBERT HOLMES BELL

MICHAEL CURLEY,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Thomas Alfred Young filed this petition for writ of habeas corpus, challenging his jury conviction for assault with intent to do great bodily harm less than murder in violation of Mich. Comp. Laws. § 750.84 and of being a prisoner in possession of a weapon in violation of Mich. Comp. Laws § 800.2834. Petitioner was sentenced to 95 months to 15 years imprisonment for the assault conviction and two to five years imprisonment for the weapon conviction. Petitioner's sentences run consecutively to his original sentences.

Petitioner was convicted of stabbing his fellow inmate in the communal shower area of the prison. At the time of the stabbing, no guards were in the area and at least five inmates were in the shower area. Defendant argues that another inmate committed the crime. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision.

Petitioner alleges that:

I. Petitioner was denied his Sixth Amendment right to effective assistance of counsel due to counsel's deficient performance.

>   II.  The prosecutor engaged in substantial and material misconduct, by eliciting improper and prejudicial character evidence and improper and prejudicial vouching for witness, thus denying petitioner his federal and constitutional due process right to a fair trial.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). The Supreme Court has held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be

deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412.  Rather, the application must also be "unreasonable." *Id.*  Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)).  Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998).  The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness.  This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990).  Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct.  The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner argues that it was error for counsel to call witness Eric Higgins as a defense witness, without knowing in advance how witness Higgins would testify.  Petitioner argues that although Eric Higgins testified at the preliminary examination, defense counsel never interviewed

- 3 -

Higgins before calling him as a defense witness. Petitioner argues that it is likely that the testimony of Higgins influenced the jury to find Petitioner guilty and a different result would have been probable if Higgins did not testify. Petitioner argues that defense counsel should have called Christopher Schnoor as a witness, because he would have testified that the victim made inconsistent statements about the assailant's identity. Further, Petitioner argues that counsel was ineffective at sentencing because he failed to ask the judge to sentence Petitioner below the recommended guidelines of 95 months, and instead asked the judge to follow the pre-sentence recommendation of the probation department.

The Michigan Court of Appeals rejected Petitioner's ineffective assistance of counsel claims explaining:

> Defendant first argues that trial counsel was ineffective in calling inmate Eric Higgins as a defense witness. Trial counsel's "[d]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). Based on the record before us, we cannot conclude that defense counsel's strategy was constitutionally deficient. Higgins testified that he was in the shower room at the time of the attack.
>
> Higgins indicated that he saw defendant enter the room, pull a knife from his towel and attack Chancy. Higgins was "100% sure" that defendant carried the knife into the shower, and recalled that defendant stabbed Chancy "a couple of times in the wrist and stomach." Chancy then fell to the floor with defendant on top of him and defendant stabbed Chancy multiple times in the side. Higgins further testified that Chancy was able to take the weapon from defendant. At that point, defendant was exhausted and Chancy was able to stab defendant four times in the back. Higgins testified that he was "100% sure" that Chancy stabbed defendant at that point. Chancy threw the weapon toward two other inmates and left the room. Higgins stated that defendant stood up about ten seconds later, retrieved the knife and threw it away.

The testimony provided by Higgins was inculpatory in that Higgins positively identified defendant as Chancy's attacker. However, we disagree with defendant's assertion that Higgins's testimony could serve no purpose for the defense. Defense counsel's strategy was to highlight the inconsistencies between Higgins's testimony and the known physical facts. Specifically, guards conducted a strip search of defendant shortly after the incident. There were no injuries on defendant's body at that time. Accordingly, Higgins was 100% incorrect that Chancy stabbed defendant four times in the back. Moreover, Higgins admitted that the video evidence proved that Martin threw the knife into the garbage can, not defendant.

By impeaching the testimony of this eyewitness, defense counsel could motivate the jury to question the accuracy or veracity of the other prisoner eyewitnesses. This fight occurred in cramped quarters with at least five grown men present. Witness testimony and video footage proved that the scene was chaotic with prisoners moving around in order to avoid becoming collateral damage in the fight. In the bedlam, one man could easily be confused for another. Defense counsel's ultimate goal was to bolster the main defense theory that David Martin, not defendant, actually committed the stabbing.

Defense counsel foreshadowed this strategy in his opening statement and reiterated it in closing argument. In opening, counsel asserted that the prisoner eyewitnesses provided varying versions of the events and were often internally inconsistent. Defense counsel further stated that the video evidence showed David Martin and "McQuiter" handling the knife and never showed defendant in possession of the weapon. In closing argument, defense counsel argued that the true assailant would have bodily injuries from wrestling on the shower floor and hand injuries from holding the crude knife, yet defendant emerged uninjured. Defense counsel pointed the finger at Martin instead, noting that the guards did not search him after the scuffle and so he could have hidden his injuries. Defense counsel pointed to video evidence that Martin suspiciously returned to the shower after the fight and argued that Martin must have been rinsing off blood. In relation to Higgins's testimony, defense counsel specifically argued:

> Now the prosecution witnesses certainly are clearly all over the board in terms of testimony here and even more so what's interesting about Mr. Higgins, which prosecution choose [sic] not call [sic] and I called, was the testimony for them at the preliminary examination was again pretty bazaar [sic] in terms of what he claimed occurred in this shower area. I mean

> he was 100% certain that the knife was wrestled away by my client, from Chancy from my client [sic] and that he was stabbed four times in the back, clearly saw it. And again we go back to the fact that Mr. Young had no injuries. There was no injuries observed on him. He didn't have to go get medical treatment and clearly if he was stabbed with this knife four times in the back there would have been injuries.
>
> Prosecutor also wants you to believe that after they wrestled around on the ground that my client was choked out, that he was unconscious . . . . Took him considerable period of time to come to and really had no bearings. Well, we'll show the video again. You'll see my client walk out of the shower area, he's not shaking his head, he's not holding his throat from being choked. He's clearly not showing any visible contributing or corroborating evidence to support any of the theories or stories from the prosecution witnesses . . . . The camera never lies as some people say.

The defense strategy was obviously unsuccessful as the jury convicted defendant, but counsel's strategy decision was not constitutionally deficient. Moreover, it is unlikely that that this evidence tipped the scales in the prosecution's favor given the various other inmate accounts identifying defendant as the attacker. In other words, there is not a "reasonable probability that, but for counsel's" decision to present Higgins's testimony, "the result of the proceeding would have been different." *Carbin*, 463 Mich at 600.

Defendant also challenges trial counsel's failure to call Christopher Schnoor as a defense witness. "[T]he failure to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009) (quotations omitted). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990). Schnoor swore in an affidavit that Chancy told him that he was afraid of the individual who actually stabbed him. Chancy claimed to be afraid of his actual assailant and falsely accused defendant, hoping to gain the favor of prison officials by doing so. This testimony merely cumulated other defense evidence that Chancy falsely accused defendant and, therefore, was not necessary to establish a substantial defense. See *People v Dixon*, 263 Mich App

- 6 -

>393, 398; 668 NW2d 308 (2004) (the defendant's ineffective assistance claim failed where counsel actually provided the proffered "substantial defense" but declined to present cumulative evidence in support). Accordingly, defendant's challenge lacks merit.

Michigan Court of Appeals decision, July 5, 2011, docket #22 at 3-5.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

It is well established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The duty to investigate derives from counsel's basic function, which is "'to make the adversarial testing process work in the particular case.'" *Kimmelman v. Morrison*, 477 U.S. 365, 384

(1986) (quoting *Strickland,* 466 U.S. at 690). This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); accord *Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004). A purportedly strategic decision is not objectively reasonable "when the attorney has failed to investigate his options and make a reasonable choice between them." *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir.1991) (cited in *Combs v. Coyle*, 205 F.3d 269, 288 (6th Cir. 2000)).

Courts have not hesitated to find ineffective assistance in violation of the Sixth Amendment when counsel fails to conduct a reasonable investigation into one or more aspects of the case and when that failure prejudices his or her client. For example, in *Wiggins v. Smith*, 539 U.S. 510, 524-29 (2003), the Supreme Court held that the petitioner was entitled to a writ of habeas corpus because his counsel had failed to conduct a reasonable investigation into potentially mitigating evidence with respect to sentencing. *Id.* According to the Court, "counsel chose to abandon their investigation at an unreasonable juncture, making a fully informed decision with respect to sentence strategy impossible." *Id.* at 527-28. Consistent with *Wiggins*, the Sixth Circuit has held, in a variety of situations, that counsel's failure to investigate constituted ineffective assistance in violation of the Sixth Amendment. *See, e.g., Towns*, 395 F.3d at 258-59. (holding that defense counsel's failure to investigate potentially important witness in robbery and felony murder trial was unreasonable, and thus constituted ineffective assistance, in violation of Sixth Amendment); *Combs*, 205 F.3d at 287-88 (holding that defense counsel was constitutionally ineffective for failing

to investigate adequately his own expert witness, who testified that, despite the defendant's intoxication at the time of the crime, the defendant nevertheless was capable of forming the requisite intent to commit the crimes); *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992) (holding that counsel was constitutionally ineffective for failing to conduct an investigation into certain physical evidence that would have undermined the prosecution's theory that the victim was shot at a distance); *Blackburn v. Foltz*, 828 F.2d 1177, 1183 (6th Cir. 1987) (holding that counsel's failure "to investigate a known and potentially important alibi witness" constituted ineffective assistance because "[c]ounsel did not make any attempt to investigate this known lead, nor did he even make a reasoned professional judgment that for some reason investigation was not necessary"); *see also Clinkscale*, 375 F.3d at 443 (collecting cases in which counsel's failure to investigate a potentially important witness constituted ineffective assistance).

Petitioner has failed to show that counsel failed to investigate witness testimony before trial. The Michigan Court of Appeals correctly found that counsel's trial strategy supported his decision to call witness Higgins to testify and not to present witness Schooner's cumulative testimony. Further, the Michigan Court of Appeals correctly determined that counsel did not err during sentencing by arguing that the court should follow the probation department's minimum sentence recommendation. Even if counsel asked the court to sentence Petitioner below the recommended guideline range, it is likely that the court would not have done so based upon the seriousness of the crime and Petitioner's criminal history. In the opinion of the undersigned, counsel's conduct at trial and at sentencing were appropriate and within the normal range of attorney representation. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an

unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner argues that the prosecutor committed misconduct by eliciting testimony from a witness concerning Petitioner's religious beliefs, and by eliciting testimony that improperly vouched for the credibility of witnesses. The Michigan Court of Appeals rejected these claims stating:

> Defendant first challenges the prosecutor's questioning of witness Schuh about defendant's religious beliefs. Specifically, the prosecutor asked Schuh why he feared for his safety as a result of his testimony against defendant. Schuh responded that defendant was part of a religious organization that "has a lot of pull" inside the prison. The prosecutor asked Schuh to explain and he began describing the religious origins of the particular organization. The implication of this testimony was that defendant's religious organization functioned as a gang within the prison.
>
> The prosecutor's line of questioning was clearly improper. MCL 600.1436 prohibits a witness from being "questioned in relation to his opinions on religion." Our Supreme Court has interpreted the statute to also prohibit a witness from testifying regarding another person's religious opinion and beliefs. *People v Bouchee*, 400 Mich 253, 264; 253 NW2d 626 (1977). The purpose of the statute is to "strictly avoid any possibility that jurors will be prejudiced against a certain witness because of personal disagreement with the religious views of that witness." *People v Jones*, 82 Mich App 510, 516; 267 NW2d 433 (1978).
>
> Defense counsel did not raise a contemporaneous objection, but the court *sua sponte* halted the line of questioning and instructed the jurors to disregard the witness's comments. We presume that jurors follow the instructions as given by the court. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1999). Defendant raised no objection to the substance of the court's curative instruction. As defendant failed to preserve his challenge to the prosecutor's questioning or the court's response, our review is limited to plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Here, the trial court "act[ed] in a swift and commendable manner in cutting off the improper religious questioning," *Dobek*, 274 Mich App at 75, and we reject defendant's

contention that this brief reference to religion affected the outcome of his trial.

Defendant also contends that the prosecutor vouched for the credibility of the lead investigating officer. Defendant challenges the following line of questioning:

> *Q.* Okay. And then once you gather all your evidence, what do you do then with it? What happens in this case, what do you do next?
>
> *A.* When the investigation is complete, if I feel that there is sufficient evidence to show that in this case [defendant] committed a crime I present that case to the prosecutor[']s office.
>
> *Q.* Okay, so when you examined all the evidence, then with your experience as an officer in this case, after you investigated it, did you draw a conclusion in this matter?
>
> *A.* Yes.
>
> *Q.* Okay and then what was that conclusion?

Defense counsel objected and the court immediately gave a curative instruction that the jury should disregard the question. Although a prosecutor engages in misconduct when he vouches for the credibility of his witnesses, *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995), this error was quickly remedied and did not render the trial unfair.

Finally, defendant contends that the prosecutor improperly vouched for the credibility of witness Larry Manning during rebuttal closing argument. During questioning, defense counsel implied that Manning was not being truthful. Specifically, defense counsel played video footage of Manning walking through the cell block, entering a cell, and exiting with an object in his hand. Defense counsel contended that this object was the homemade knife used to stab Chancy. Manning denied this accusation and testified that he walked through the cell block with magazines underneath his arm. He claimed that he entered a cell where he exchanged the magazines for cigarettes. He then exited the cell carrying only the cigarettes.

> During rebuttal closing argument, the prosecutor made the following statement:
>
>> He talks about Manning and the fact that Manning is going down the hall and he supposedly reaches into the cell and Manning testifies that he had magazines under arm [sic] and that's what he [sic] handing him. We have the video. You can take it back. Go back and look at it. I've looked at it and I believe him and if you look at it close when he's walking down the hall I believe you will see something under - -
>
> Defense counsel objected and the court immediately instructed the jury to disregard the prosecutor's comment.
>
> The prosecutor's comment does not amount to reversible error. The prosecutor's argument was responsive to defense counsel's theory that Manning was lying and actually carried the knife into the shower room. The prosecutor should not have stated "I believe him" and should have allowed the video evidence to speak for itself. However, "otherwise improper remarks by the prosecutor might not require reversal if they respond to issues raised by the defense." *People v Callon*, 256 Mich App 312, 331; 662 NW2d 501 (2003). Defendant's right to a fair trial was protected by the trial court's immediate curative instruction to the jury and defendant is not entitled to further relief.

Michigan Court of Appeals decision, July 5, 2011, docket #22 at 6-7.

Misconduct by a prosecutor can rise to the level of a due process violation. *Lundy v. Campbell*, 888 F.2d 467, 474 (6th Cir. 1989). However, before habeas corpus relief becomes available, the misconduct must be so egregious as to deny petitioner a fundamentally fair trial. *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1355 (6th Cir.1993). The habeas court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985). In addition, the court may view any misconduct in light of the strength of the competent proofs tending to establish guilt. *See Angel*

*v. Overburg*, 682 F.2d 605, 608 (6th Cir. 1982) (*en banc*). "When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis ... is the fairness of the trial, not the culpability of the prosecutor.'" *Serra*, 4 F.3d at 1355 (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).

In this case, the court cut off the prosecutor's line of questioning and instructed the jury to disregard the testimony and the prosecutor's comments. The error was not so prejudicial that it could have violated Petitioner's due process rights by affecting the outcome of the trial, especially in light of the evidence presented against Petitioner. Moreover, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appeal ability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appeal ability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appeal ability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court

in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: September 3, 2015          /s/ TIMOTHY P. GREELEY
                                  TIMOTHY P. GREELEY
                                  UNITED STATES MAGISTRATE JUDGE